UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOSE LOZANO and ANYEL RIVERA, on behalf of :
themselves and all others similarly situated, :
                                        :     **No. 25 Civ. 500**
                        Plaintiffs,     :
                                           :
        -against-                 :     **FLSA COLLECTIVE**
                                         :     **ACTION COMPLAINT**
THE JAR CIRCLE INC. d/b/a FRIDA'S MEXICAN :
GRILL, AAG HOSPITALITY INC. d/b/a FRIDA'S :
MEXICAN CUISINE, and RODRIGO         :
SEMPERTEGUI,                     :     **JURY TRIAL DEMANDED**
                                         :
                   Defendants.     :
-------------------------------------------------------------------X

        Plaintiffs Jose Lozano ("Lozano") and Anyel Rivera ("Rivera") (together, "Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys Pechman Law Group PLLC, complaining of Defendants The Jar Circle Inc. d/b/a Frida's Mexican Grill, ("Frida's"), AAG Hospitality Inc. d/b/a Frida's Mexican Cuisine ("Frida's in Plainview") (collectively with Frida's, referred to as the "Frida Restaurants"), and Rodrigo Sempertegui (collectively referred to as the "Defendants"), allege:

## NATURE OF THE COMPLAINT

        1.      While employed as non-exempt cooks at the Frida Restaurants, Plaintiffs and other similarly situated employees worked up to sixty-six hours per workweek. Defendants paid them a salary instead of paying them an hourly rate as required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law (NYLL). By doing so, Defendants failed to pay Plaintiffs their overtime wages and spread-of-hours pay. Defendants also failed to furnish Plaintiffs with a wage notice upon hire, and wage statements at the end of each pay period reflecting their full wages paid, hourly wage rates, and hours worked.

2.      Plaintiffs bring this action on behalf of themselves, and all similarly situated non-exempt employees seeking injunctive and declaratory relief against Defendants' unlawful actions and to recover their unpaid overtime wages, spread-of-hours pay, statutory damages, pre- and post-judgment interest, liquidated damages, and attorneys' fees and costs pursuant to the FLSA and the NYLL.

## JURISDICTION

3.      This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiff's claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

4.      Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391, as the Frida Restaurants are located and operated by Defendants in this District.

## THE PARTIES

**Plaintiff Jose Lozano**

5.      Jose Lozano resides in Nassau County, New York.

6.      Defendants employed Lozano as a cook from approximately December 2021 to May 4, 2024.

**Plaintiff Anyel Rivera**

7.      Anyel Rivera resides in Nassau County, New York.

8.      Defendants employed Rivera as a cook from approximately March 2022 to September 2024.

**Defendant The Jar Circle Inc. d/b/a Frida's Mexican Grill**

9.      Defendant The Jar Circle Inc. is a New York corporation that owns, operates, and does business as Frida's Mexican Grill, a restaurant located at 3545 Merrick Road, Seaford, New York 11783.

10. Frida's is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

11. Frida's has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

12. In each of the three years preceding the filing of this Complaint, Frida's has had an annual gross volume of sales in excess of $500,000.

**Defendant AAG Hospitality Inc d/b/a Frida's Mexican Cuisine**

13. Defendant AAG Hospitality Inc d/b/a Frida's Mexican Cuisine is a New York corporation, with an address for services of process of 3545 Merrick Road, Seaford, NY 11783, the same principal place of business and address for service of process as Defendant The Jar Circle Inc.

14. Frida's in Plainview operates a restaurant located at 387 South Oyster Bay Road, Plainview, NY 11803.

15. Frida's in Plainview is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

16. Frida's in Plainview has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

17. In each of the three years preceding the filing of this Complaint, Frida's in Plainview has had an annual gross volume of sales in excess of $500,000.

**Defendant Rodrigo Sempertegui**

18. Defendant Rodrigo Sempertegui is an owner of the Frida Restaurants.

19. Sempertegui is directly involved in managing the operations at the Frida Restaurants.

20. Sempertegui is regularly present at the Frida Restaurants and supervised and directed employees, including Plaintiffs' work.

21. Throughout Plaintiffs' employment, Sempertegui exercised power over personnel decisions at the Frida Restaurants, including hiring and firing employees, setting their wages, and otherwise controlling the terms and conditions of their employment.

22. For instance, on a weekly basis, Sempertegui instructed Plaintiff Rivera to work at both Frida Restaurants in the same workweek.

23. Sempertegui determined Plaintiffs' rates of pay throughout their employment.

24. Sempertegui exercised sufficient control over the Frida Restaurants' operations to be considered Plaintiffs' employer under the FLSA and the NYLL.

**The Frida Restaurants Jointly Employed Plaintiffs**

25. The Frida Restaurants have a high degree of interrelated and unified operations, centralized control of labor relations, common control, common business purposes, interrelated business goals, and common ownership.

26. The Frida Restaurants work together on advertising and marketing initiatives, including sharing a marketing employee.

27. The Frida Restaurants regularly interchange and share employees, including Plaintiffs.

28. For example, Plaintiff Rivera worked at both Frida Restaurants during the same workweek.

29. The Frida Restaurants regularly share and exchange supplies, including food items such as avocados, onions, meats, and rice.

4

30.     Employees of the Frida Restaurants, including Plaintiff Rivera, were required to transfer supplies between the restaurants.

26.     Sempertegui is the owner of the Frida Restaurants and is sued individually in his capacity as an owner, officer and/or agent of both restaurants.

**FACTUAL ALLEGATIONS**

27.     Plaintiffs performed duties that included food preparation, cleaning, and washing dishes.

28.     Despite Plaintiffs regularly working days with a spread of ten or more hours, Defendants failed to compensate spread-of-hours premiums to Plaintiffs for such days.

26.     Defendants failed to furnish Plaintiffs with accurate wage statements with their wages reflecting their full wages paid, hourly wage rates, and hours worked.

27.     Defendants failed to furnish Plaintiffs with wage notices at the time of their hiring or change in their wage rates.

**Plaintiff Jose Lozano's Wages Paid and Hours Worked**

28.     From December 2021 to October 2023, Lozano typically worked approximately sixty-two hours per workweek: from approximately 11:00 a.m. to 10:00 p.m. with a daily one-hour break, on Sunday, Monday Wednesday, and Thursday; and from approximately 11:00 a.m. to 11:00 p.m. with a one-hour break on Friday and Saturday at Frida's.

29.     From approximately November 2023 through the end of his employment, Lozano typically worked approximately fifty-two hours per workweek: from approximately 11:00 a.m. to 10:00 p.m. with a one-hour break on Monday, Wednesday, and Thursday; and from approximately 11:00 a.m. to 11:00 p.m. with a one-hour break on Friday and Saturday at Frida's.

5

30.     From December 2021 through November 2022, Defendants paid Lozano a daily rate of $160, regardless of how many hours he worked each day.

31.     From approximately December 2022 through October 2023, Defendants paid Lozano a daily rate of $180, regardless of how many hours he worked each day.

32.     From approximately November 2023 until his termination in May 2024, Defendants paid Lozano a daily rate of $200, regardless of how many hours he worked each day.

33.     Throughout Lozano's employment, Defendants paid Lozano's wages in a combination of direct deposit and a personal check.

34.     For example, for the payroll period ending on March 8, 2024, Defendants issued Lozano a payroll check in the amount of $496.40 and also issued him a personal check for $400.00 for the same payroll period.

**Plaintiff Anyel Rivera's Wages Paid and Hours Worked**

35.     From March 2022 to August 2023, Rivera typically worked approximately fifty-five to sixty-six hours per workweek: from 11:00 a.m. to 11:00 p.m. with a daily one-hour break, five to six days per workweek at Frida's.

36.     From September 2023 through May 2024, Rivera typically worked approximately sixty-six hours per workweek: from 11:00 a.m. to 11:00 p.m. with a daily one-hour break, six days per workweek at the Frida's or Frida's in Plainview.  During this time period, Rivera often worked at Frida's and Frida's in Plainview in the same workweek.

37.     From approximately June 2024 through the end of his employment, Rivera typically worked Monday, from 9:30 a.m. to 11:00 p.m. with a one hour break, at Frida's; and then five days at Frida's in Plainview. During this period, Rivera worked Sunday and two weekdays from 11:00 a.m. to 10:00 p.m., with a daily one-hour break, and Friday

and Saturday from 11:00 a.m. to 11:00 p.m., with a daily one-hour break, at Frida's in Plainview, for total of approximately sixty-four and a half hours per workweek between the Frida's Restaurants.

38.    From March 2022 through approximately October 2022, Defendants paid Rivera a daily rate of $150, regardless of how many hours he worked each day.

39.    From approximately November 2022 through approximately May 2024, Defendants paid Rivera a daily rate of $160, regardless of how many hours he worked each day.

40.    Beginning in June 2024 and through the end of his employment, Defendants paid Rivera a daily rate of $180, regardless of how many hours he worked each day.

41.    Throughout Rivera's employment, Defendants paid Rivera's wages by check.

42.    For example, in or about June 2024, Defendants issued separate payroll checks to Rivera for wages earned in the same workweek, one from The Jar Circle Inc. and the other from AAG Hospitality.

## COLLECTIVE ACTION ALLEGATIONS

43.    Plaintiffs bring this action on behalf of themselves, and all similarly situated persons who are current and/or former non-exempt employees, including cooks, line cooks, dishwashers, and porters (the "FLSA Collective") of Defendants since the date three years prior to the filing of this Complaint who elect to opt-in to this action (the "FLSA Collective").

44.    The FLSA Collective consists of at least twenty FLSA Collective who have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them wages.

45.     Throughout Plaintiffs' employment, Plaintiffs and the FLSA Collective have regularly worked more than forty hours on at least some workweeks in the last three years and have been subjected to Defendants' common pay policies depriving them of overtime wages at the rate of one and one-half times their regular hourly wage rates for hours worked over forty per workweek.

46.     Defendants are aware or should have been aware that the FLSA required them to pay Plaintiffs and the FLSA Collective an overtime premium for hours worked over forty per workweek.

47.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees their compensation.

48.     Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiffs and the FLSA Collective.

49.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  All similarly situated FLSA Collective members can be readily identified and located through Defendants' records.  They should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

### FIRST CLAIM
### (FLSA – Unpaid Overtime)

50.     Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

51.     Defendants are an employer within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiffs.

52.     Defendants were required to pay Plaintiffs and the FLSA Collective one and one-half (1½) times their regular hourly rate for all hours worked in excess of forty hours per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 *et seq.*

53.     Defendants failed to pay Plaintiffs and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

54.     Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages.

55.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to Plaintiffs' and the FLSA Collective's compensation.

56.     As a result of Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

### SECOND CLAIM
### (NYLL – Unpaid Overtime Wages)

57.     Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

58.     Defendants were Plaintiffs' employers within the meaning of the NYLL §§ 190, 651(6), 652 and supporting regulations from the New York State Department of Labor ("NYDOL"), such as 12 N.Y.C.R.R. Part 146.

59.     Under NYDOL regulations, including 12 N.Y.C.R.R. § 146-1.4, Defendants were required to pay Plaintiffs one and one-half (1½) times his regular rate of pay for all hours worked in excess of forty per workweek.

60.     Defendants failed to pay Plaintiffs the overtime wages to which they were entitled to under the NYLL and its supporting regulations.

61.     Defendants willfully violated the NYLL and its supporting regulations by knowingly and intentionally failing to pay Plaintiffs overtime wages.

62.     Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their unpaid overtime wages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action, liquidated damages.

9

**THIRD CLAIM**
**(NYLL – Spread-of-Hours Pay)**

63.     Plaintiffs repeat and reallege all foregoing paragraphs by reference.

64.     Defendants willfully failed to pay Plaintiffs spread-of-hours pay, *i.e.*, additional compensation of one hour of pay at the basic minimum hourly wage rate, for each day during which their shifts spread over more than ten hours.

65.     By failing to pay Plaintiffs spread-of-hours pay, Defendants willfully violated the NYLL and its supporting and implementing NYDOL regulations, including 12 N.Y.C.R.R § 146–1.6.

66.     Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their unpaid spread-of-hours pay, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

**FOURTH CLAIM**
**(NYLL – Failure to Provide Accurate Wage Statements)**

67.     Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

68.     The NYLL and WTPA require employers to provide employees with an accurate wage statement with each payment of wages.

69.     Defendants' failure to comply with NYLL § 195(3) goes beyond technical violations.  It is directly intertwined with and facilitated Defendants' practice and policy of not paying Plaintiffs.

70.     As part of their general practice and policy, Defendants issued Plaintiffs wage statements that did not reflect their total hours worked per workweek and regular and overtime wage rates due, thereby preventing Plaintiffs from knowing whether they received all pay at the correct wage rates due for all hours worked per workweek. Defendants did this deliberately to hide from Plaintiffs that they were entitled to receive one and one-half times their regular hourly wage rate per hour for every hour worked

over forty per workweek.  Had Defendants complied with the requirements of NYLL § 195(3), Plaintiffs would have known that they were supposed to receive, and would have received, one and one-half times their regular rate per overtime hour worked.

71.    By concealing this information, Defendants avoided paying Plaintiffs their overtime wages due per workweek as alleged in this Complaint.

72.    As a result of Defendants' violations of NYLL § 195(3), Plaintiffs are entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL.

**FIFTH CLAIM**
**(NYLL – Failure to Provide Accurate Wage Notices)**

73.    Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

74.    The NYLL and WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

75.    Defendants failed to furnish Plaintiffs at the time of hiring, and whenever there was a change to his rate of pay, with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

76.    Defendants' failure to comply with NYLL § 195(1) goes beyond mere technical violations.  It is directly intertwined with and facilitated Defendants' practice and policy of not paying Plaintiffs their overtime wages due.

11

77.     As part of their general practice and policy, Defendants did not provide Plaintiffs with any notice whatsoever, let alone the wage notice required under NYLL § 195(1), upon hire or when his pay rates changed.  Defendants did this to conceal from Plaintiffs that they were non-exempt employees entitled to overtime pay, as well as the regular and overtime rates they should have received.  Had Plaintiffs received this information, they would have known that they had to receive pay of one and one-half times his regular wage rate for hours worked over forty per workweek, which would have allowed them to complain about Defendants' wage payment failures alleged here.

78.     By concealing this information, Defendants avoided informing Plaintiffs of their legal rights and thereby avoided paying them their overtime wages due per workweek as alleged in this Complaint.

79.     As a result of Defendants' violations of NYLL § 195(1), Plaintiffs are entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1–b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment:

a.      certifying the case as a collective action for the violations of the FLSA alleged in the Complaint, designating the named Plaintiffs as the representatives of the FLSA Collective, and designating Plaintiffs' attorneys as counsel for the FLSA Collective;

b.      authorizing the issuance of notice at the earliest possible time to all FLSA Collective members employed by Defendants within the three years immediately preceding the filing of this action.  This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

c.      declaring that Defendants violated the overtime wage provisions of the FLSA, the NYLL, and supporting regulations;

12

d.      declaring that Defendants violated the spread-of-hours pay provisions of the NYLL and supporting regulations;

e.      declaring that Defendants violated the wage notice and wage statement provisions of the NYLL's WTPA;

f.      declaring that Defendants' violations of the FLSA and the NYLL were willful;

g.      enjoining and permanently restraining Defendants from further violations of the FLSA and NYLL;

h.      awarding Plaintiffs and the FLSA Collective damages for unpaid overtime wages under the FLSA;

i.      awarding Plaintiffs damages for unpaid overtime wages, spread-of-hours pay, and statutory damages under the NYLL and WTPA;

j.      awarding Plaintiffs and the FLSA Collective, liquidated damages in an amount equal to the total amount of wages found to be due pursuant to the FLSA and NYLL;

k.      awarding Plaintiffs and the FLSA Collective, pre- and post-judgment interest under the NYLL;

l.      awarding Plaintiffs and the FLSA Collective reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

m.      awarding such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand

a trial by jury in this action.

Dated:  New York, New York
        January 29, 2025

PECHMAN LAW GROUP PLLC

By: _____
        Louis Pechman
        Vivianna Morales
        Pechman Law Group PLLC
        488 Madison Avenue - 17th Floor
        New York, New York 10022
        (212) 583-9500
        pechman@pechmanlaw.com
        morales@pechmanlaw.com
        *Attorneys for Plaintiffs*

14